**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


JAMES D. BROWN,                               :                    Case No. 05:12 CV 1560

      Petitioner,                           :

vs.                                          :

TERRY TIBBLES, WARDEN,                         :                    **MAGISTRATE'S REPORT AND
                                                                   RECOMMENDATION**

      Respondent.                          :


## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES. Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ and Petitioner's Traverse (Docket Nos. 1, 8 & 14). For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, the determination of factual issues made by a

State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).

The applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence.  *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir. 2002) (*citing* 28 U.S.C.

§ 2254(e)(1)).  This statutory presumption of correctness extends to factual findings made by

state appellate courts on the basis of their review of trial court records.  *Id.* (*citing Brumley v.*

*Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769

(1981)).

A summary of the findings of fact made by the Court of Appeals of Ohio, Ninth District,

Summit County in *State v. Brown*, 2011 WL 806418, *1 (2011), follows.

> Kimberly Truman (Ms. Truman) had two sons with Petitioner.  Ms. Truman also had a daughter, AW, from a previous relationship.  Although they never married, Ms. Truman and Petitioner lived together over the years. Petitioner became a father figure to AW, and Petitioner and Ms. Truman raised their children and AW as a family.

> When she was five years of age, AW told members of her family that Petitioner had asked her to "lick certain areas of his private place."  Ms. Truman, ultimately dismissed AW's accusation, believing it to be the result of AW's having seen Truman and Petitioner being intimate the week earlier.

> After AW turned fourteen years old, she began acting out.  She smoked marijuana, drank alcohol, and saw her boyfriend over Ms. Truman's protests.  In early April 2009, AW ran away from home, prompting Ms. Truman to call the police.  Ms. Truman decided to have a "heart to heart" talk with AW shortly thereafter to try to discover the source of her unruly behavior.  AW confided that Petitioner had been sexually abusing her over the course of several months. Specifically, Petitioner had digitally penetrated AW, performed oral sex on her, and made AW perform oral sex on him.

> AW alleged that Petitioner had provided her with marijuana and alcohol on more than one occasion, after which he would take advantage of her intoxication.  These incidents took place at the family's home, at the family's cabin, and in the family's Dodge Durango.  Truman called the police after she talked with AW, and the police took statements from both of them.  AW also underwent an interview and examination at the Akron Children's Hospital CARE Center ("CARE Center").

### III. PROCEDURAL BACKGROUND.

**A.    INDICTMENTS.**

On May 21, 2009, the jurors of the Grand Jury of the State of Ohio, Summit County,

Ohio, returned a six-count INDICTMENT as to Petitioner:

| | |
|---|---|
| Counts 1 & 2 | Rape by force or threat of force, a violation of OHIO REV. CODE § 2907.02(A)(2). |
| Counts 3 & 4 | Sexual Battery, a violation of OHIO REV. CODE § 2907.03(A)(5). |
| Counts 5 & 6 | Corrupting another with drugs, a violation of OHIO REV. CODE § 2925.02(A)(4)(a). |

On October 19, 2009, the Summit County, grand jury supplemented the Indictment with

six additional counts as to Petitioner:

| | |
|---|---|
| Counts 7 & 8 | Corrupting another with drugs, a violation of OHIO REV. CODE § 2925.02(A)(4)(a). |
| Count 9 | Rape by force or threat of force, a violation of OHIO REV. CODE § 2907.02(A)(2). |
| Count 10 | Sexual Battery, a violation of OHIO REV. CODE § 2907.03(A)(5). |
| Count 11 | Rape, a violation of OHIO REV. CODE § 2907.02(A)(1)(b). |
| Count 12 | Sexual Battery, a violation of OHIO REV. CODE § 2907.03(A)(5). |

(Docket No. 8-1, pp. 1-8 of 333).

**B.    PRETRIAL MOTIONS.**

Petitioner waived his right to a jury trial, requested severance of the drug and sexual

offenses for purposes of trial and objected to the State's (1) motion asking the Court to call the

victim, AW, as the Court's witness and (2) motion to admit "other act evidence"[1] (Docket No. 8-

1, pp. 8-9 of 333).  The request for severance was denied; however,  the court granted the State's

---

[1]

    **Other crimes, wrongs or acts.**  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

motion asking that AW be called as a Court witness and granted the State's motion seeking to admit other act evidence (Docket No. 8-1, pp. 10; 11, 112-115 of 333).

### C.    THE BENCH TRIAL.

The trial commenced on January 19, 2010, before Judge Brenda Burnham Unruh.  On January 25, 2010, Judge Unruh entered guilty verdicts as to Counts 1 through 11 and dismissed the sexual battery charge as alleged in Count 12 of the supplemental Indictment (Docket No. 8-1, pp. 12-13; 21-24 of 333).

### D.    POST-TRIAL MOTIONS

On February 4, 2010, Petitioner's counsel delivered a letter to the court after the conviction but before sentencing.  This letter allegedly constituted new evidence that the victim had falsely accused Petitioner of the crimes she now claimed did not occur, in effect, recanting her testimony given during the bench trial (Docket No. 8-1, pp. 14-15 of 333).  In her judgment entry of February 25, 2010, Judge Unruh rejected the recantation letter and fount that the testimony from independent witnesses and physical evidence supported the veracity of the victim's original statement (Docket No. 8-1, pp. 23-24 of 333).

### E.    SENTENCING.

On February 11, 2010, Judge Unruh convened the hearing whereupon, Petitioner was denied the right to allocute[2] until after the following sentence was pronounced:

---

[2]

(A)    **Imposition of sentence**.  Sentence shall be imposed without unnecessary delay.  Pending sentence, the court may commit the defendant or continue or alter the bail.  At the time of imposing sentence, the court shall do all of the following:

(1)    Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.

4

| COUNT | CRIME | TERM OF YEARS |
|-------|-------|---------------|
| 1, 2 & 9 | Rape | A definite term of eight years which is not a mandatory term. |
| 3, 4 & 10 | Sexual battery | A definite term of one year which is not a mandatory term. |
| 5, 6, 7 & 8 | Corrupting another with drugs | A definite term of one year which is not a mandatory term. |
| 11 | Rape | A definite term of three years which is not a mandatory term. |

It was further ordered that:

(1)     The sentences imposed in Counts 1, 5, 6, 7, 8, 9 10 and 11 be served CONSECUTIVELY and NOT CONCURRENTLY to each other;

(2)     The sentences imposed in Counts 2, 3 and 4 be served CONCURRENTLY with each other and CONCURRENTLY with the sentences imposed in Counts 1, 5, 6, 7, 8, 9, 10 and 11;

(3)     Petitioner was to serve a total of 24 years in the Ohio Department of Rehabilitation and Correction;

(4)     Upon release from prison, Petitioner serve five years mandatory post-release control; and

(5)     Petitioner was designated as a Tier III Sex Offender/Child Victim Offender Registrant (Docket No. 8-1, pp. 16-20 of 333).

**F.     THE DIRECT APPEAL.**

On March 5, 2010, Petitioner, by and through different counsel than at trial, filed a notice of appeal in the common pleas court (Docket No. 8-1, pp. 25-26 of 333).  In the brief on the merits filed on May 28, 2010, Petitioner asserted six assignments of error:

1.     The State failed to present sufficient evidence to support Petitioner's conviction on Counts 1, 2, 3, 4, 5, 6, 9, 10 and 11.

2.     The trial court erred by admitting the computer evidence and then relying on that evidence to support its guilty verdict.

3.     The trial court erred by denying the defense motion for time to have its own expert examine the computer hard drive and reports created by the State's expert.

5

4.      Petitioner was denied the effective assistance of counsel when his counsel failed to object to the admission of medical records, the DVD and police reports.

5.      The trial court erred by failing to comply with CRIMINAL RULE 32(A).

6.      The trial court erred by failing to merge Counts 1 and 3; 2 and 4; 9 and 10.

(Docket No. 8-1, pp. 27-57 of 333).

In a supplemental brief filed on June 1, 2010, Petitioner asserted three additional assignments of error:

1.      The trial court erred when it failed to dismiss Count 8.

2.      The judge erred by relying on hearsay to make its judgment.

3.      The judge erred by relying on facts not in the record.

(Docket No. 8-1, pp. 66-71 of 333).

On March 9, 2011, the court of appeals rendered a decision that affirmed in part and reversed in part, the trial court's decision.  The court made the following findings:

1.      Viewing the evidence in a light most favorable to the State, the appellate court could not conclude that the trial court erred in convicting Petitioner of rape, sexual battery and corrupting a minor with drugs because other evidence, primarily the semen in the family's Dodge Durango, corroborated the victim's pre-recantation accusations.

2.      Because there was other evidence corroborating the victim's accusations, including the presence of Petitioner's semen in the area where the victim was raped, any error in the trial court's admission of evidence taken from the family computer was, at most, harmless error.

3.      Petitioner failed to show that he suffered any prejudice by counsel's failure to object to the admission of the CARE Center DVD.  Because the victim's written statement mirrored the information she gave the CARE Center, the statement was therefore surplusage in the record that already contained the same information.

4.      Petitioner's sufficiency challenge to the evidence was unsuccessful because he failed to set forth any argument that the State failed to prove a continuous course of criminal conduct pursuant to OHIO REV. CODE § 2901.12(H) and the court could not create an argument on Petitioner's behalf.

6

5.     Because Petitioner's eighth and ninth assignments of error rely upon the trial court's February 25, 2010 entry, a nullity, they are without merit.

6.     Petitioner's fifth assignment of error was overruled because the record did not support the conclusion that Petitioner was denied the right of allocution.

7.     The case was **remanded** to consider if the trial court's failure to merge Counts 1 and 3, 2 and 4, and 9 and 10, violated principles of *State v. Johnson*, Slip Opinion No. 2010-Ohio-6314, a case in which the Supreme Court held that when determining whether two offenses are allied offenses of similar import subject to a merger under OHIO REV. CODE § 2941.25, the conduct of the accused must be considered.

(Docket No. 8-1, pp. 127-149 of 333).

G.     POST-CONVICTION RELIEF.

Petitioner filed a petition to vacate or set aside sentence in common pleas court on October 4, 2010, asserting:

1.     Actual innocence.

2.     Denial of the right to present a defense.

3.     Denial of the right to face-to-face confrontation of the witnesses against him.

4.     Ineffective assistance of counsel.

(Docket No. 8-1, pp. 196-219 of 333).

On October 20, 2010, the State filed a motion to dismiss/for summary judgment (Docket No. 8-1, pp. 221-233 of 333).  Petitioner filed a response to the State's motion on November 1, 2010 (Docket No. 8-1, pp. 245-249 of 333).  The court of common pleas entered a final and appealable judgment entry on November 1, 2010, denying Petitioner the relief requested (Docket No. 8-1, pp. 250-254 of 333).  Petitioner perfected an appeal in the court of appeals on November 31, 2010 (Docket No. 8-1, p. 255 of 333).  In the brief on the merits, Petitioner presented one assignment of error:

7

The trial court erred when it failed to conduct an evidentiary hearing following submission of witness affidavits that contained evidence dehors the record supporting the alleged victim's recantation and where Petitioner introduced an expert attorney opinion that trial counsel was ineffective and that counsel's ineffectiveness prejudiced Petitioner's right to a fair trial.

The issue for review is:

Where the trial court failed to review the trial transcript, improperly found that the affidavits in support of the petition for post-conviction relief contained hearsay, and failed to properly consider the credibility factors set forth in *State v. Calhoun*, 86 Ohio St. 3d 279 (1999), did the trial court err when it failed to conduct an evidentiary hearing on the issues raised by Petitioner in his petition for post-conviction relief?

(Docket No. 8-1, p. 259 of 333).

The State of Ohio's brief was filed in the court of appeals on April 1, 2011 (Docket No. 8-1, pp. 288-306 of 388) and Petitioner filed a reply brief on April 14, 2011 (Docket No. 8-1, p. 312-321 of 333).  On December 28, 2011, the court of appeals affirmed the trial court's denial of the petition for post-conviction relief (Docket No. 8-2, pp. 322-329 of 333).

    **H.**    **APPEAL TO THE SUPREME COURT OF OHIO.**

From the judgment entered on March 9, 2011, Petitioner filed a notice of appeal in the Supreme Court on April 25, 2011 (Docket No. 8-1, pp. 15-151 of 333).  In the memorandum that accompanied the notice, Petitioner presented ten propositions of law:

1.    In a harmless error analysis, a reviewing court errs by placing the burden on the defendant to demonstrate that the error affected his substantial rights when the burden must be on the State to demonstrate that the error did not effect substantial rights of the defendant.

2.    The improper admission of "other acts" evidence is not harmless when the sole complainant in a sexual abuse case recants prior to trial and there is no other direct evidence of sexual abuse.

3.    There is insufficient evidence in a bench trial when the State fails to present sufficient relevant, material and competent evidence to support a conviction because in a bench trial, the trial judge is presumed to rely upon only relevant,

8

material and competent evidence in arriving at its judgment.

4.     Because a trial judge is presumed to consider only the relevant, material and competent evidence in convicting a criminal defendant in a bench trial, a reviewing court cannot consider irrelevant, immaterial, or incompetent evidence to affirm the defendant's conviction on appeal from a bench trial.

5.     When a trial judge makes findings of fact and conclusions of law after a bench trial in which the trial judge explains its reasons for convicting the defendant, those finding of fact and conclusions of law may be used to overcome the presumption that a trial judge in a bench trial considers only relevant, material and competent evidence in convicting the defendant.

6.     Statements admitted pursuant to OHIO EVIDENCE RULE 803(A) are admitted in error when the declarant testifies that she did not make the statements for purposes of medical diagnosis or treatment.

7.     The admission of inadmissible hearsay in a bench trial is prejudicial to a defendant when applying the prejudice prong of the ineffective assistance of counsel test where only other evidence admitted at trial was also inadmissible hearsay and a trial judge is presumed to consider only relevant, material and competent evidence in convicting the defendant after a bench trial.

8.     A defendant is denied effective assistance of counsel in violation of the Ohio and United States Constitutions when his counsel fails to object to the admission of statements an alleged sexual abuse victim made to police and at a CARE Center when those statements were admitted under EVID. R. 803(A) and the declarant testifies at trial that she made the statements for some purpose other than medical diagnosis or treatment.

9.     A trial judge abuses her discretion and denies a defendant his right to present a defense when she denies a defendant's request for a continuance so he may obtain his own computer expert when the State's computer expert revealed a significant amount of findings in a final report which was completed in the middle of trial.

10.    The trial judge erred by failing to provide a defendant the right of allocution until after she passed sentence.

(Docket No. 8-1, pp. 152-169 of 333).

The State of Ohio signed a waiver of memorandum in response on April 28, 2011

(Docket No. 8-1, p. 194 of 333).

Chief Justice Maureen O'Connor denied Petitioner's request for leave to appeal and

9

dismissed the appeal as not involving any substantial constitutional question on June 22, 2011 (Docket No. 8-1, p. 195 of 333).

#### I.    REMAND TO THE TRIAL COURT.

Judge Unruh died on March 13, 2011 and on May 5, 2011, Judge Tammy O'Brien conducted the re-sentencing hearing pursuant to the decision of the court of appeals.  The prosecuting attorney concurred that Counts 1 and 3; 2 and 4: and 9 and 10 were allied offenses so Judge O'Brien merged the charges in Counts 3, 4 and 10 for purposes of sentencing, imposing no separate penalty with regard to Counts 3, 4 and 10.  Petitioner was given the opportunity to make a statement on his behalf under OHIO CRIM. R. 32 and then Judge O'Brien imposed the following sentence:

1.    Counts 1, 5, 6, 7, 8, 9 and 11 were to be served CONSECUTIVELY and NOT CONCURRENTLY with each other.

2.    The sentence imposed in Count 2 was to be served CONCURRENTLY with the sentences imposed in Counts 1, 5, 6, 7, 8, 9 and 11.

3.    Petitioner is sentenced to a total of 23 years in the custody of the Ohio Department of Rehabilitation and Corrections

(Docket No. 8-1, pp. 330-333 of 333).

There is no evidence in the record that Petitioner pursued a direct appeal of the re-sentencing order, requested post-conviction relief from the new order of sentencing or filed a request for review in the Supreme Court of Ohio.

#### J.    PETITION FOR WRIT OF HABEAS CORPUS.

In the Petition for Writ of Habeas Corpus filed in this Court on June 19, 2012, Petitioner, *pro se*, asserted ten claims with supporting facts:

1.    In a harmless error analysis, a reviewing court errs by placing the burden on the defendant to demonstrate that the error affected his substantial rights when the

10

burden must be on the State to demonstrate that error did not effect substantial rights of the defendant (Docket No. 1, p. 5 of 19).

2.     The alleged victim of sexual abuse case recants prior to trial and testifies that she made up the sexual abuse allegation prior to trial and testifies that she made up the sexual abuse allegations and there is no other direct evidence of sexual abuse (Docket No. 1, p. 6 of 19).

3.     There is insufficient evidence in a bench trial when the State fails to present sufficient relevant, material and competent evidence to support a conviction because in a bench trial the judge is presumed to rely only upon the relevant, material and competent evidence in arriving at its conclusion (Docket No. 1, p. 8 of 19).

4.     Because a trial judge is presumed to consider only relevant, material and competent evidence in convicting a criminal defendant in a bench trial, a reviewing court cannot consider irrelevant, immaterial, or incompetent evidence to affirm the defendant's conviction on appeal from a bench trial (Docket No. 1, p. 9 of 19).

5.     When a trial judge makes findings of fact and conclusions of law after a bench trial in which the trial judge explains its reasons for convicting the defendant, those findings of fact and conclusions of law may be used to overcome the presumption that a trial judge in a bench trial considers only relevant, material, and competent evidence in convicting the defendant (Docket No. 1, p. 13 of 19).

6.     Statements admitted pursuant to OHIO EVIDENCE RULE 803(A) are admitted in error when the declarant testifies that she did not make the statement for the purpose of medical diagnosis or treatment (Docket No. 1, p. 12 of 19).

7.     The admission of inadmissible hearsay in a bench trial is prejudicial to a defendant when applying the prejudice prong of the ineffective assistance of counsel test where the only other evidence admitted at trial was also inadmissible hearsay and a trial judge is presumed to consider only relevant, material and competent evidence in convicting defendant after a bench trial (Docket No. 1, p. 11 of 19).

8.     A defendant is denied the effective assistance of counsel in violation of the Ohio and United States Constitutions when his counsel fails to object to the admission of statements that the alleged sexual abuse victim made to police and at a CARE Center when those statements are admitted under EVID. R. 803(A) and the declarant testifies at trial that she made the statements for some purpose other than medical diagnosis or treatment (Docket No. 1, p. 14 of 19).

9.     A trial judge abuses her discretion and denies a defendant his right to present a

11

defense when she denies a defendant a request for continuance to permit him to obtain his own computer expert when the State's computer expert revealed a significant amount of findings in a final report which was completed in the middle of the trial (Docket No. 1, p. 15 of 19).

10.    A trial judge errs by failing to provide a defendant the right to allocution until after she passed sentence (Docket No. 1, p. 16 of 19).

### IV. THE STATUTE OF LIMITATIONS.

There is a one year statute of limitation that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court. *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)).  This statute of limitations begins to run from the latest of:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

In this case, the order re-sentencing Petitioner was filed on May 10, 2011.  Thirty days thereafter, the time to file a timely appeal as of right in the court of appeals expired.  Petitioner did not file a notice of appeal within this time.  However, the statute of limitations was tolled by the pending motion for post conviction relief which was not decided by the court of appeals until December 28, 2011.  Under Section 2244(d)(1)(A), the date on which the judgment became final by the expiration of the time for seeking such review, was February 13, 2012, the last date that Petitioner could perfect an appeal as of right in the Supreme Court of Ohio.  Petitioner had one

12

year from February 13, 2012 to institute a petition for habeas corpus.  Petitioner filed a timely petition on June 19, 2012, approximately eight months before the statute of limitations expired on February 12, 2013.  Petitioner's Petition for Writ of Habeas Corpus was timely filed under 28 U.S.C. § 2244(d)(1)(A).

### V.  EXHAUSTION AND PROCEDURAL DEFAULT STANDARDS.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), 28 U. S. C. § 2254, there are constraints placed on this federal habeas court before granting a timely filed application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  *Doan v. Carter*, 548 F. 3d 449, 454 (6th Cir. 2008) *cert. denied,* 130 S. Ct. 366 (2009) (*citing Williams v. Taylor*, *supra,* 120 S. Ct. at 1523).  In effect, habeas review is limited to non-time barred claims for relief that have been fully exhausted in state court.  *Id.*

The federal habeas court is not a forum for trying facts and issues which a petitioner failed to pursue in state proceedings.  *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).  When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state court remedies were still available or due to a state procedural rule that prevented the state courts from reaching the merits of the claim, that claim is procedurally defaulted.  *Id*. at 549-550.  A federal court will review a defaulted claim only if a petitioner "show[s] that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default."  *Id*. at 550.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as

13

a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012) (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2565 (1991)).  "A habeas petitioner procedurally defaults a claim if:

> (1)    the petitioner fails to comply with a state procedural rule;
> (2)    the state courts enforce the rule;
> (3)    the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and
> (4)    the petitioner cannot show cause and prejudice excusing the default."

*Id.* (*citing Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010) (en banc); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986)).

The "cause" standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *Id.* (*citing McCleskey v. Zant,* 493, 111 S.Ct. 1454, 1469 (1991) (internal quotation marks omitted)).  Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available. *Id.* (*citing McCleskey*, at 1470).  "[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." *Id.* (*citing Edwards v. Carpenter*, 120 S.Ct. 1587, 1590 (2000)).

Petitioner was required to squarely present the specific issues which he alleged in the Petition for Writ of Habeas Corpus, describe operative facts and assert legal theories underlying his claims that he submitted in the state courts, either on direct review of the conviction or in a post-conviction attack.  Respondent concurs and the Magistrate agrees that Petitioner fairly

14

presented his first, second, third, fourth, fifth, seventh, eighth, ninth and tenth claims, or some variation thereof, to the appropriate state courts.  These claims have been exhausted and are not procedurally defaulted.

Petitioner's challenge to the sixth claim, however, is subsumed by the eighth claim as it was not exhausted independently of the claim that counsel's representation was ineffective.  It was exhausted as a reason for finding that trial counsel's representation fell below reasonable standards.  The merits of Petitioner's sixth claims will be addressed when determining whether trial counsel was ineffective.

### VI. HABEAS STANDARD OF REVIEW.

A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013).

A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Holder v. Palmer*, 588 F. 3d 328, 343 (6th Cir. 2009) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)).  A state court decision will be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases.  *Id.* (*citing Williams*, 120 S.Ct. at 1523)

15

(emphasis added).

A decision is an unreasonable application of clearly established federal law if it identifies the correct principle of law but unreasonably applies it.  *Williams v. Coyle,* 260 F.3d 684, 699 (6th Cir. 2001) (*See Williams v. Taylor, supra*, 120 S. Ct. at 1519).  "[A]n unreasonable application of federal law is different from an incorrect application of federal law . . .  *Id.*  Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  *Id.*  Rather, that application must also be unreasonable."  *Id.* (*citing Williams v. Taylor, supra*, 120 S.Ct. at 1521) (original emphasis)).

As a condition for obtaining habeas relief from the federal court, a state prisoner must show that the state court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011).  This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Id.* (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2795, n.5 (1979)).

**VII. DISCUSSION**.

1.  **IN A HARMLESS ERROR ANALYSIS, A REVIEWING COURT ERRS BY PLACING THE BURDEN ON THE DEFENDANT TO DEMONSTRATE THAT THE ERROR AFFECTED HIS SUBSTANTIAL RIGHTS WHEN THE BURDEN MUST BE ON THE STATE TO DEMONSTRATE THAT ERROR DID NOT EFFECT SUBSTANTIAL RIGHTS OF THE DEFENDANT.**

Petitioner suggests that he is being denied the right to due process because the state failed to establish that the "teen porn" evidence was admissible under OHIO EVID. R. 404(B).  As a

16

result, Petitioner claims that he was denied the right to due process because of the incorrect application of the harmless error analysis by the court of appeals.

Respondent argues that it is not within the province of this federal habeas court to reexamine state court determinations on state law issues.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Sanborn v. Parker,* 629 F.3d 554, 575 (6th Cir. 2010) (*citing Estelle v. McGuire*, 112 S.Ct. 475, 479 (1991)).  Thus "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id*. (*citing Estelle*, 112 S.Ct. at 479).  As a result, "errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Id.* (*citing Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983)).  The only remedy of habeas corpus lies only for violation of federal laws.  *Id*.

The actual question in this case is whether the state appellate court reasonably applied the harmless error standard as articulated by the Supreme Court.  Petitioner can only be granted relief if he is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  The Magistrate acknowledges that this is a fairly difficult standard to meet; however, Petitioner has not demonstrated that the admissibility of the computer expert testimony unfairly impugned him or was egregiously misleading as determined by the Supreme Court.  This challenge to the admissibility of evidence pursuant to state law does not raise a concern of constitutional magnitude and therefore, it can be no part of federal habeas review.

17

2. **THE ALLEGED VICTIM OF SEXUAL ABUSE CASE RECANTS PRIOR TO TRIAL AND TESTIFIES THAT SHE MADE UP THE SEXUAL ABUSE ALLEGATION PRIOR TO TRIAL AND TESTIFIES THAT SHE MADE UP THE SEXUAL ABUSE ALLEGATIONS AND THERE IS NO OTHER DIRECT EVIDENCE OF SEXUAL ABUSE.**

3. **THERE IS INSUFFICIENT EVIDENCE IN A BENCH TRIAL WHEN THE STATE FAILS TO PRESENT SUFFICIENT RELEVANT, MATERIAL AND COMPETENT EVIDENCE TO SUPPORT A CONVICTION BECAUSE IN A BENCH TRIAL THE JUDGE IS PRESUMED TO RELY ONLY UPON THE RELEVANT, MATERIAL AND COMPETENT EVIDENCE IN ARRIVING AT ITS CONCLUSION.**

The Magistrate construes Petitioner's first and second assignments of error as a challenge to the sufficiency of inculpatory evidence. Since AW recanted, admitting that her original statements given to police, the social worker at the CARE Center, her friends and family, were fabricated, there is a lack of substantial evidence to support his conviction. Petitioner contends that the conviction, therefore, should be set aside.

Respondent argues that sufficient evidence was presented to convict Petitioner and the victim's recantation was a credibility determination that only the trial court could resolve.

The standard that governs a federal habeas review of a state court's determination on the sufficiency of the evidence comes from the Supreme Court's holding in *Jackson v. Virginia*, 99 S.Ct. 2781 (1979). *Hilliard v. Hudson,* 599 F.Supp.2d 921, 931 (N.D.Ohio,2009). In *Jackson*, the Court held that in determining whether the evidence in the trial court was sufficient to support a conviction, the federal court should ask, "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 931-932 (*citing Jackson*, 99 S.Ct. at 2789). Further, a federal court will not generally reassess the credibility of witnesses. *Id.* (*citing Gall v. Parker*, 231 F.3d 265, 286 (6th Cir.2000) *cert. denied*, 121 S. Ct. 2577 (2001)).

Bound by the controlling standard set forth in *Jackson,* the Magistrate must view *all of the evidence* in a light most favorable to the state and determine whether viewing the record as a

18

whole, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  An adaptation of the best case scenario favoring the state suggests that the prosecutor made a concerted effort to undermine AW's decision to recant her testimony and nullify the testimony of the other witnesses.  It appears that resolution of the case hinged on whether the judge believed AW's testimony recanting her prior representations to the police, counselor, grand jury, her aunt and her friends.

AW told the grand jurors that Petitioner had her perform oral sex when she was five years of age and then again when she was 14 and 15 years of age and that Petitioner provided marijuana and beer to AW and her friends (Docket No. 8-3, pp. 39-41; 68-74 of 226).  On direct examination, AW acquiesced to the accuracy of reports from CARE Center personnel in which she identified twenty incidents of sexual contact with Petitioner, including the admission to her mother that when she was five years of age, Petitioner made her lick his private parts.  She admitted to her mother that it was true and they moved to her grandma's home until Petitioner convinced her to return (Docket No. 8-3, pp. 29-31; 49-51; 63-65 of 226).  Testimony was later adduced that AW, Ms. Truman and Petitioner were embroiled in a conflict about her interracial dating.  Fearing that Ms. Truman and/or Petitioner would send her to a boarding school in Florida, the threat caused AW to act out, engaging in unruly, rebellious conduct which included lying to her parents, running away from home and sneaking her boyfriend into the house at night for sleep-overs.  In response to the court's inquiry, AW admitted that she believed if Petitioner was out of the home, she would not have to go to a boarding school.  So when she was confronted by her mother about her behavior, AW alleged that she was acting out because of the improper sexual contact she had with Petitioner (Docket No. 8-3, pp. 19-28; 95; 100 of 226).

When she recanted her testimony, AW admitted that the allegations of sexual contact

with Petitioner spiraled out of control and AW admitted that she "got in over her head" (Docket No. 803, pp. 31-33 of 226).  AW acknowledged other sordid details of their encounters that she reported to the police and/or CARE Center, including Petitioner's request that AW admit the allegations were fabricated and her mother's attempt at influencing her to not testify (Docket No. 8-3, pp. 71-85; 89-92 of 226).  AW admitted to SM, JS and ES that she lied, that she never performed oral sex on Petitioner in the car and that the story was concocted as part of the plan to get rid of Petitioner and "keep her boyfriend" (Docket No. 8-3, pp. 116-120; 124, 125 of 226). During the camping trip, AW admitted that Petitioner gave her one beer but he never provided marijuana and/or liquor for AW or her friends.  She recalled that after drinking the one beer, she continued to drink beer after Petitioner went to bed.  Petitioner undressed her only because she vomited after drinking the beer (Docket No. 8-3, pp. 107-110; 128-129 of 226).  AW summarily denied that Petitioner touched her, had sexual contact with her or provided marijuana, engaged in provocative behavior with her friends or provided marijuana and liquor to her and her friends (Docket No. 8-3, pp. 126-127; 130 of 226).

However, JS offered that when she was 13 or 14 years of age, Petitioner shared marijuana with her and AW during the camping trip (Docket No. 8-3, pp. 139-140; 142 of 226). She explained that AW had been offered a car or trip if she changed her testimony (Docket No. 8-3, p. 150 of 226).  After school started in the Fall of 2009, JS observed that AW was permitted to "hang out" more, she was no longer a homebody and she had a cell phone (Docket No. 8-3, pp. 152-153 of 226).

Fifteen year-old SM, AW's friend in the seventh and eighth grade, commented that she thought it inappropriate when Petitioner pinched AW's "boobs," hit her butt or "play" with her

20

shirt (Docket No. 8-3, pp. 167-168; 171, 184 of 226).  SM recounted that AW had confided in her that at the age of five or six, Petitioner had engaged her in oral sex (Docket No. 8-3, pp. 178-179 of 226).  Later, she explained that AW mentioned that she was promised a car if she did not testify (Docket No. 8-3, p. 181 of 226).  SM's mother testified that AW was "torn" about testifying against Petitioner and inquired of her whether she should testify against Petitioner and explained that if she did not, she could go to college, get a car and her family would have money (Docket No. 8-3, pp. 195-197, 201 of 226).

Seventeen year-old ES acknowledged that she and AW had been friends.  She recalled twice that Petitioner provided alcohol and drugs for her and AW.  First, during their sophomore year of high school, Petitioner invited them to his car to "smoke a bowl."  Petitioner drove around for approximately fifteen minutes while the three of them, Petitioner, AW and ES, smoked marijuana (Docket No. 8-3, pp. 203-209; 210-213; 222-223; 225 of 226).  Second, she watched as Petitioner personally gave AW alcohol and marijuana (Docket No. 8-3, p. 216 of 226).

AW's aunt, testified that when she was seven and AW was five years of age, AW told her that while taking a shower, AW and Petitioner engaged in oral sex.  Petitioner subsequently convinced AW that this encounter was a dream (Docket No. 8-4, pp. 12-16 of 100).  AW's aunt further testified that after a card game/beer fest hosted by Petitioner, she was awakened the following day with memories of engaging in oral sex with Petitioner and Petitioner's admonition that she maintain her silence about the incident (Docket No. 8-4, pp. 18-19 of 100).  AW's aunt also recalled generally that Petitioner engaged in sexual contact with AW before school in the morning and in his car (Docket No. 8-4, p. 19 of 100).

AW's grandmother also testified that she was told by her daughter that Petitioner "did bad things" to her granddaughter when she was five years of age.  AW's mother explained that AW was confused after witnessing her and Petitioner having sex (Docket No. 8-4, p. 43-44 of 100).  Once when her mother was gone, AW confided in her grandmother that her mother wanted her to lie about Petitioner's acts against her because of her brothers who were Petitioner's biological children.  She recounted that after drinking with Petitioner, she woke up and was naked and of the apparent sexual contact made on the way to school (Docket No. 8-4, pp. 45, 47, 53 of 100).

Cathy Laube, a social worker in the CARE Center at Children's Hospital, specialized in interviewing children alleging sexual abuse or neglected for thirteen years.  Ms. Laube's role was not to ascertain the truth of the matters asserted but to compile a history for purposes of medical diagnosis or treatment by the nurse practitioner.  So when AW and her mother presented on April 13, 2009, she first discussed the history with AW's mother.  Then Ms. Laube interviewed AW, who gave specific details about the sexual abuse beginning with the incident when she was five years of age and her mother dismissed it as something she had seen elsewhere.  AW told Ms. Laube that Petitioner took a hiatus from his illicit contact with her until she was 14 years of age.  She confirmed that AW had gotten drunk while in Petitioner's care and then woke up the next day barely clad, to which Petitioner assured her that she had vomited.  AW claimed that Petitioner had purchased for her a bottle of Absolut and given her a bag of pot.  Petitioner took advantage of AW's intoxicated state when making sexual contact.  There was never any penile/vaginal intercourse.  AW advised that she obtained marijuana from Petitioner (Docket No. 8-4, pp. 64, 76, 80-85; 89, 95 of 100).

Advised by the investigating officer that some of the oral sex acts were consummated in Petitioner's Dodge Durango, a forensic scientist collected samples of semen from three locations in the Durango and buccal cells from Petitioner, his spouse and AW   The DNA testing conducted on three samples of seminal fluid were consistent with Petitioner's seminal fluid. There was none of AW's saliva or DNA in the Dodge Durango and her mother denied that the DNA could possibly be hers (Docket No. 8-5, pp. 47, 48, 49, 50-51 of 132).

The Magistrate cannot re-weigh the credibility of these witnesses and the fact that there is no forensic or scientific evidence linking Petitioner to the rape and sexual battery or eyewitness accounts, is not dispositive of whether Petitioner made sexual contact with A.W or provided her with drugs and alcohol.  Neither is the Magistrate persuaded that the recanting of AW's testimony constitutes a *per se* bar to the admission of the child-victim's statements under OHIO EVID. R. 803(4).  The weight given to the testimony of AW, her mother, her grandmother and friends, is all dispositive as to the sufficiency of the evidence claim.  All of the witnesses told a similar account of the events and the identification of Petitioner as the perpetrator cannot be mistaken.  It was also apparent to the judge that attempts to dissuade AW from testifying were made with promises of maintaining an intact family, telling AW that she and her brothers would not have a father if she did not remain silent about the alleged sexual encounters with Petitioner.  Also, there was evidence that if AW did not testify, her college tuition would be paid and a car would be purchased for her use.  When all of this evidence is viewed in the light most favorable to the State, the Magistrate is persuaded that the trial court judge's decision is supported by credible evidence.  A rational trier of fact who in addition to hearing the witnesses' observations, observed AW's demeanor at trial and the recording of her interview with Ms.

23

Laube, could have found the evidence sufficient to find Petitioner guilty of rape, sexual battery and corrupting AW, SM and ES with drugs beyond a reasonable doubt.

The undersigned Magistrate is not persuaded that the State appellate court's findings were contrary to or an unreasonable application of *Jackson* or that they undermine the confidence of the verdict.  Petitioner is not entitled to habeas relief based on these claims.

4. BECAUSE A TRIAL JUDGE IS PRESUMED TO CONSIDER ONLY RELEVANT, MATERIAL AND COMPETENT EVIDENCE IN CONVICTING A CRIMINAL DEFENDANT IN A BENCH TRIAL, A REVIEWING COURT CANNOT CONSIDER IRRELEVANT, IMMATERIAL, OR INCOMPETENT EVIDENCE TO AFFIRM THE DEFENDANT'S CONVICTION ON APPEAL FROM A BENCH TRIAL (DOCKET NO. 1, P. 9 OF 19).

5. WHEN A TRIAL JUDGE MAKES FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER A BENCH TRIAL IN WHICH THE TRIAL JUDGE EXPLAINS ITS REASONS FOR CONVICTING THE DEFENDANT, THOSE FINDINGS OF FACT AND CONCLUSIONS OF LAW MAY BE USED TO OVERCOME THE PRESUMPTION THAT A TRIAL JUDGE IN A BENCH TRIAL CONSIDERS ONLY RELEVANT, MATERIAL, AND COMPETENT EVIDENCE IN CONVICTING THE DEFENDANT (DOCKET NO. 1, P. 13 OF 19).

Petitioner's fourth and fifth claims are merged for purposes of analysis for the reasons that the arguments are identical in content.  Both suggest that the trial court erred in the admission of hearsay evidence about alleged abuse from the child declarant to her family or social worker denied him the right to a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments.

Respondent states that there is no clearly-established law which holds that in a bench trial, the court commits a constitutional error by improperly admitting evidence.  Petitioner is not entitled to relief under Section 2254 on this issue because according to Respondent, evidentiary rulings are not cognizable in habeas.

It is important to note that AW was subject to cross-examination under oath and she responded willingly to questions about Petitioner's actions.  Even if the trial court erred in

admitting this evidence, it has already been stated that errors in how the court treated AW's testimony clearly involves the application of its own state laws, especially with regard to the admissibility of evidence.  As a general rule, such claims are not cognizable under federal habeas corpus law.

Even if the application of state law were subject to the Court's review, the trial court's evidentiary ruling must be accorded considerable deference since it was not contrary to Supreme Court precedent that a child-victim's statements made to a health care professional for treatment or diagnosis are admissible.  The trial court could have easily found that the conversation with Ms. Laube was excluded from the hearsay rule under OHIO EVID. R. 803(4), because the comments were made by a child victim in contemplation of obtaining a medical diagnosis or course of treatment.  Ms. Laube confirmed that the only reason she elicited AW's history was so that the nurse practitioner could perform a medical examination.

Having just admitted to her mother the allegations against Petitioner, AW was motivated to comment on the truthfulness of her encounters with Petitioner.  The facts of her encounters with Petitioner had a strong indicia of reliability for the reason that the identical story was repeated during the trial by her friends, her mother, her grandmother and Ms. Laube and AW explained the details of an abusive relationship in language that demonstrated sexual knowledge clearly inappropriate for a teenager (Docket No. 8-4, p. 66 of 100).  Under OHIO EVID. R. 801(D)(1)(c), it was clearly within the trial court's discretion to admit a child statement identifying the perpetrator of child abuse and making statements for purposes of a follow-up medical examination.

For these reasons, the trial court's decision to admit the sworn testimony of AW is not

contrary to or an unreasonable application of federal law.  Neither does its admission undermine the confidence of the verdict.  Petitioner is not entitled to habeas relief based on his fourth claim.

6. STATEMENTS ADMITTED PURSUANT TO OHIO EVID. RULE 803(A) ARE ADMITTED IN ERROR WHEN THE DECLARANT TESTIFIES THAT SHE DID NOT MAKE THE STATEMENT FOR THE PURPOSE OF MEDICAL DIAGNOSIS OR TREATMENT (DOCKET NO. 1, P. 12 OF 19).

7. THE ADMISSION OF INADMISSIBLE HEARSAY IN A BENCH TRIAL IS PREJUDICIAL TO A DEFENDANT WHEN APPLYING THE PREJUDICE PRONG OF THE INEFFECTIVE ASSISTANCE OF COUNSEL TEST WHERE THE ONLY OTHER EVIDENCE ADMITTED AT TRIAL WAS ALSO INADMISSIBLE HEARSAY AND A TRIAL JUDGE IS PRESUMED TO CONSIDER ONLY RELEVANT, MATERIAL AND COMPETENT EVIDENCE IN CONVICTING DEFENDANT AFTER A BENCH TRIAL (DOCKET NO. 1, P. 11 OF 19).

8. A DEFENDANT IS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS WHEN HIS COUNSEL FAILS TO OBJECT TO THE ADMISSION OF STATEMENTS AND ALLEGED SEXUAL ABUSE VICTIM MADE TO POLICE AND AT A CARE CENTER WHEN THOSE STATEMENTS ARE ADMITTED UNDER EVID. R. 803(A) AND THE DECLARANT TESTIFIES AT TRIAL THAT SHE MADE THE STATEMENTS FOR SOME PURPOSE OTHER THAN MEDICAL DIAGNOSIS OR TREATMENT (DOCKET NO. 1, P. 14 OF 19).

Petitioner's grounds six, seven and eight challenge trial counsel's performance.  Ground six was not exhausted as an independent claim, rather as a claim that counsel was ineffective for failing to object to admission o statements by AW.  Ground seven alleges specifically that trial counsel's performance was deficient and Ground eight is further explanation of why counsel's performance was deficient.  For purposes of this analysis, Petitioner's allegations in grounds six, seven and eight are consolidated into one claim that counsel's performance fell below professional standards when he failed to object to the:

(1)  admission of AW's written statement prepared for the police;
(2)  admission of the testimony of Cathy Laube; and
(3)  admission of the DVD of the interview conducted by Cathy Laube.

But for this failure, Petitioner projects that he would have been acquitted due to the fact that there was insufficient evidence remaining on which to base a conviction.

Under the familiar test in *Strickland v. Washington*, 104 S.Ct. 2052 (1984), a petitioner

26

must satisfy two prongs—deficiency and prejudice—to succeed in an ineffective assistance claim. *Rayner v. Mills*, 685 F.3d 631, 636 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 876 (2013). In order to demonstrate deficiency, a petitioner must show his "counsel's representation fell below an objective standard of reasonableness." *Id*. (*citing Strickland*, 104 S.Ct. at 2065)). There is a strong presumption that counsel's performance is professionally reasonable. *Strickland*, 104 S.Ct. at 2065). To demonstrate prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (*citing Strickland,* 104 S.Ct. at 2068). The Supreme Court has defined a "reasonable probability" as one that is "sufficient to undermine confidence in the outcome." *Id*.

This habeas review is limited to determining whether the state court's application of the *Strickland* reasonable probability test to the facts of his case was objectively unreasonable and whether the trial counsel's failure to object to the state court's decision, particularly the admission of what Petitioner considered hearsay, AW's written statement and the digital record of AW's interview by forensics, was contrary to or an unreasonable application of clearly established federal law as articulated by the Supreme Court of the United States. The Magistrate is not persuaded that counsel's representation fell below an objective standard of reasonableness or that Petitioner suffered any prejudice as a result of counsel's failure to object.

### A. THE POLICE STATEMENT.

The appellate court reasoned that since the written statement that AW completed for the police mirrored the information given the CARE center, the statement was surplusage. The failure to object to its admission did not fall below the objective standard of reasonableness and the court did not find that if counsel had objected, the outcome of the trial would have been

different.

Ohio law tends to liberalize the requirements for considering hearsay when applied to child victims of sexual assault. These residual hearsay exceptions are an appropriate method to admit children's statements from sexual assault cases if the statements are otherwise proven sufficiently trustworthy. The residual exception has been held to justify the admissibility of statements by child abuse victims to law enforcement officials or social workers. The interests of justice are served by the admission into testimony of such statements because it is of debatable propriety to require young victims of abuse to take the stand.

Clearly, AW's written statement constituted non-verbal conduct intended to qualify as an exception to the rules of evidence concerning inadmissible hearsay. Because the court considered it surplusage, mirror images of the testimony given by AW and Ms. Laube, less weight was given this document. The trial court also admitted a written statement made by AW to the police in which she recanted her prior statement (Docket No. 8-7, pp. 5-6 of 75). Nevertheless, the court considered the written documents themselves an exception to the hearsay rule and therefore admissible. Petitioner has failed to present evidence or an argument which would lend itself to finding that counsel's failure to proffer some meritless or futile objection constitutes deficient performance. Against the backdrop of a bench trial, there is some thought that the failure to object was pursuant to a trial stratagem particularly since an objection would not have rendered the police report inadmissible. Petitioner has failed to demonstrate that counsel's failure to object to an admissible police statement was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings.  Petitioner is not entitled to relief based on this claim.

      B.  THE TESTIMONY OF CATHY LAUBE AND THE DVD.

Upon review of the transcript, trial counsel conducted a judicious, meaningful cross-examination of Ms. Laube, hoping to achieve some balanced consideration of the facts based on reliable principles and methods.  However, Ms. Laube was merely a forum in which AW could express her history.  To that end, trial counsel objected to the admission of her testimony on the basis that she was a social worker, not a qualified expert under OHIO CRIM. R. 16.  Trial counsel also objected to the admission of the taped recording of Ms. Laube's interview with AW on the basis that it was not authenticated (Docket No. 7-9 of 75).  The Magistrate cannot find that counsel's performance fell below professional standards because he made oral evidentiary objections to the admissibility of this evidence that the prosecutor offered at trial.

     **9.  A TRIAL JUDGE ABUSES HER DISCRETION AND DENIES A DEFENDANT HIS RIGHT TO PRESENT A DEFENSE WHEN SHE DENIES A DEFENDANT A REQUEST FOR CONTINUANCE TO PERMIT HIM TO OBTAIN HIS OWN COMPUTER EXPERT WHEN THE STATE'S COMPUTER EXPERT REVEALED A SIGNIFICANT AMOUNT OF FINDINGS IN A FINAL REPORT WHICH WAS COMPLETED IN THE MIDDLE OF THE TRIAL.**

Petitioner contends that when denying the motion for continuance the trial court deprived him of the opportunity to have his own expert look at the hard drive.

Denial of a continuance rises to the level of a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'...."  *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (*citing Morris v. Slappy*, 103 S.Ct. 1610, 1616 (1983) (*quoting Ungar v. Sarafite*, 84 S.Ct. 841, 850 (1964)); *see Ungar*, 84 S. Ct. at 849 ("These matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances.  But the fact that something is arguable does not

make it unconstitutional.").  The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process.  *Id.* (*citing Ungar*, 84 S.Ct. at 849 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.").  A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Id.* (*citing Powell v. Collins,* 332 F.3d 376, 396 (6th Cir.2003) ("Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefit[t]ed the defense.").

The Magistrate cannot point to a mechanical test that will assist with deciding whether the denial of a continuance in this case was so arbitrary as to violate due process.  The answer to whether the denial of a continuance rises to the level of a violation of due process is in the circumstances present in this case, particularly, the reasons that the trial judge presented at the time the request was denied.

It is important to note that several months prior to trial, counsel had been provided logs from visits to pornographic sites on the home computer.  Trial counsel was prepared to refute Petitioner's access to the computer with his work records.  A few days prior to trial, additional information about the use of the computer was provided.  Unsure of what to do with this new information and the possibility that it would lead to uncharted issues, counsel requested a continuance to ascertain what, if anything, was needed to decipher the new data.  However, at the conclusion of the expert's testimony, trial counsel's request became clear.  A continuance was needed to determine if the navigation of "teen porn" cites in this case was linked to "pop

30

ups" (Docket No. 8-5, pp. 10-13; 14-15 of 132).

A special agent employed in the computer crimes unit by the Ohio Bureau of Criminal Identification and Investigation, analyzed the computer that was seized from Petitioner's address to determine if evidence of the rape was stored on the computer. The agent searched the internet history of the websites, looking for images or movies or something that would indicate if a rape had occurred and found no images of the victim, no patterns consistent with the investigation and certainly no evidence of rape. The agent did find "navigated to" websites that were consistent with teenage pornography. These sites had been visited during late nights and early mornings eastern standard time. The agent also found searches for "how to report child sexual abuse" and "do child sex offenders get punished with no proof." The investigator was unable to determine whether or not, Petitioner was the visitor to these sites (Docket No. 8-6, pp. 15; 25-26; 30-31; 32, 35, 57, 58 of 174).

Having held the motion for continuance in abeyance until information outside of counsel's knowledge or information became apparent during the direct inquiry, the trial judge's decision denying a continuance is arguable, but in light of the reasons given, the request for delay was not justifiable. Counsel proposed hiring an expert for the sole purpose of determining if visits to these sites was generated by web browser windows that display advertisements. Petitioner has not shown that an expert would have been available or that additional time to track down and navigate the use of pop-ups would have benefitted his defense. After viewing the totality of the circumstances in this case, it cannot be said that the denial of Petitioner's motion for a continuance was arbitrary or that it was based on a lack of reasoning. Representing neither a contrary or an unreasonable application of Supreme Court precedent, the circumstances of this

31

particular case determine that the denial of a continuance did not rise to the level of a violation of due process.

### 10. A TRIAL JUDGE ERRS BY FAILING TO PROVIDE A DEFENDANT THE RIGHT TO ALLOCUTION UNTIL AFTER SHE "PASSED" SENTENCE (DOCKET NO. 1, P. 16 OF 19).

Petitioner claims that the state trial court violated his right to due process by failing to afford counsel an opportunity to speak on his behalf, address him personally and ask if he wished to make a statement on his own behalf or present information in mitigation of punishment, all rights guaranteed him under OHIO CRIM. R. 32(A) (1).  In fact, when Petitioner was given the opportunity to allocute, the sentence had been imposed and the judge was clearly disinterested in anything Petitioner said or presented to mitigate his punishment.

The Ohio Supreme Court has determined that the CRIM. R. 32(A)(1) confers an absolute right of allocation.  *State v. Campbell*, 90 Ohio St. 3d 320, 323, 738 N. E.2d 1178, 1188 (2000). Before imposing a sentence, a trial court **must** address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present information in mitigation of punishment.  *Id.*

In the instant case, the evidence in the record shows that the state trial court failed to afford Petitioner the right to speak on his behalf in the first sentencing.  When trial counsel reminded the judge of Petitioner's rights under CRIM. R. 32(A), she stated that under the circumstances, she did not think that Petitioner had anything that he wanted to say.  Petitioner gave a brief statement **after** the judge had imposed the sentence but as the judge reminded him, this was the first time he spoke during the trial and there was no reason to alter the sentence or even consider his statement in mitigation of punishment (Docket No. 8-8, pp. 22, 24 of 36).

Petitioner is correct that he was deprived of an absolute right to allocute before Judge

Unruh imposed the sentence.  However, this argument fails to consider that his original sentence was vacated.  The state court sought to have Petitioner re-sentenced to comply with the statutory requirements and when the first sentence was vacated, it became a nullity.  The re-sentencing court began with a clean slate, affording Petitioner the rights he was denied in the first hearing and making an entirely new sentencing determination.  Whether Judge Unruh afforded Petitioner the right to allocation in the first hearing became irrelevant upon remand.  On remand, Judge O'Brien gave Petitioner an opportunity to make a statement and present any information in mitigation of punishment as required under CRIM. R. 32(A).  Petitioner cannot obtain habeas relief on this claim.

## VIII. CONCLUSION.

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:          April 24, 2013

## IX. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the

fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.